Good morning. Good morning to you. It is a privilege to be here. This is the second time I've appeared in the Eighth Circuit, although the first time was in a prior century. Don't ask me which one. But it's a pleasure to be before you again. I guess the most important thing I can say at this point is since the time the arbitration was held and the case was before the district judge and after Exide filed its initial brief, there was a case decided by the National Labor Relations Board, which is controlling at this point in time, by the name of MV Transportation, which is in our reply brief. It was issued by the Labor Board four days after we submitted our initial brief and 31 days before the appellee filed its brief, but we were able to highlight it for the court. And simply what happened is in the arbitrator, and I'm sure you've all read the briefs, but the arbitrator said that because despite this lengthy list of rights that management had, including the right to subcontract and contract out, that it did not specifically include leave administration, and that by leaving out leave administration, and I want to quote this exactly, on page 16 of his award, arbitrator Halter said, As for Article 2, Management Rights, it does not specifically reference or identify leave administration as reserved solely to management. This lack of specificity serves as an implied recognition that leave administration is a mandatory subject of bargaining. Well, the law changed with MV Transportation. The law prior to this time before the board and the courts was that you had to show, if you were going to take unilateral action as an employer, you had to show that the union had expressly and unequivocally waived the right to bargain over that. We took the position, and still take the position, that expressly mentioning contracting out does unequivocally show that they waived that right. But, the National Labor Relations Board in September said, that's not the standard anymore. The standard is what is called contract coverage. If the contract covers the action taken by the employer, then the employer can take unilateral action at any point in time on that. There is clearly contract coverage since it expressly mentions it. The arbitrators relied on the fact that we didn't specifically say leave administration, which I think is poor reasoning to say the least, but we did say contract out. But at this point in time, the issue is, and by the way, and applies to all cases pending at whatever point in time in the courts or before the board. Does it apply to the interpretation of the CBA itself or only under the Section 8 violation? That's a great question. It clearly applies to a finding of an unfair labor practice and finding that there's a duty to bargain. But, if there's no duty to bargain under the National Labor Relations Act, then certainly there would be no duty to bargain under the contract itself. It wouldn't be a contract violation if what the arbitrator said violated the contract was taking unilateral action. They really are one in the same. If there's no violation of the NLRA, meaning the employer had no duty to bargain, then it had the right to make the change and therefore didn't violate the contract. Does that bump up into whether we have the jurisdictional question then? Well, I think the parties have stipulated to jurisdiction. Can you do that? I don't know, but we cited case law and the appellate agrees that says that where in federal court there is an issue of a 301 claim, that is what we're doing, which is trying to vacate the award, and a concomitant National Labor Relations Act matters, then you do have jurisdiction over both. It's kind of like diversity jurisdiction. You have federal question jurisdiction and then you have ancillary jurisdiction. There you go. Thank you. And it's the same kind of thing. So yes, you do have jurisdictions stipulated to and the case law supports that. But the problem, as I see it, is we have so many cases, and we even had one I think just came out last week, that just hammer and hammer and hammer the idea that the award could just be flat out wrong. They could just get it 100% off the rails, but if it draws any essence from the contract, that you agree to arbitration and you live by the sword and die by the sword. And, Your Honor, there is no dispute that it is a very heavy burden. There is no doubt about that. I read a study that says 7% of the cases where a party is trying to vacate an award are successful. I get that. I've been doing this for 45 years. This is the second time. And I've arbitrated hundreds of cases. This is only the second time I've ever done this because this isn't just wrong and poorly reasoned. This is utterly off the rails and in the ditch. And that's really the standard here, and we readily acknowledge that. It's not the arbitrator that has to be messed up and did this and did that. What he did here is palpably wrong and absolutely inconsistent with what the party agreed to. The fact of the matter is the reason the FMLA policy is in there was to give employees the right to file a grievance if the FMLA was violated. As I'm sure you know, if your FMLA rights have been violated, you have the right to go to either the United States Department of Labor and file a complaint or you can sue. Those are your two options. This gave the employees the right to file a grievance, which is obviously a lot easier and a lot less expensive. It says, interestingly, in the contract, it says that a copy of the policy is available at all locations. This was not a Fort Smith policy. This was Exide's corporate policy, which they clearly had the right to modify. And by incorporating it into the contract, employees could file a grievance. It didn't mean that Exide had to bargain over changing its corporate ride policy. They didn't have to do that. But in addition, they also had to express in specific language in their management rights provision that gives them, without any equivocation, the right to contract out. And I might also say, in all other management functions, not expressly limited by this agreement. What about the arbitrator interpreted the CBA as incorporating this entire human resources policy and procedure? Yes, he did. Once you do that, how do you not say what he ultimately concluded was fine if you incorporate that entire document into the CBA? Because it brings in the policy and the procedures, correct? It does. It undoubtedly does. But the question is whether or not the employer could change those without bargaining. And since they have the unlimited right, absolutely unlimited, to contract out anything, and by the way, retain all other management rights, then they certainly would have the right to change the policy. And let me just add one other thing. The Labor Act says that you only have to bargain over things that are a substantial, material, significant change. But this arbitrator found that under this new policy, you have to make two phone calls instead of one. You needed access to a fax machine, which Exide has. You needed to have a telephone, which people have. And the idea that that's some material, substantial, significant change is ridiculous. And there's board authority, circuit court authority, that says you can change an administrator or change the way you administer a policy or practice, as long as it doesn't substantially or significantly change the benefit that you are providing. And so, as I said, it may be agreeable. And the idea that this was a substantial, material, significant change is simply incorrect in the two phone calls thing. But I'd also add one other thing. If it is even remotely permissible for this arbitrator to say that the company can't do anything to change its corporate policy that is incorporated in here, then that means, for example, it couldn't decide to administer the FMLA at its corporate office in Atlanta. It wouldn't even be able to do that. The management rights provision couldn't possibly contemplate that they have to administer it in Fort Smith, even if the policy changes someplace else. It's incomprehensible. It's kind of like, I'm old enough to know that the policy used to be you picked up your payroll check on Friday at the plant. That obviously has changed. We have a different society, a different environment. Things are done electronically. Not always to my satisfaction, but they are. And that's the world we're in. So the idea that this language means that an employee has to be able to go and hand a piece of paper to the HR manager in Fort Smith when it's the corporate policy is completely bereft, in my view, of any reason whatsoever. And so I guess I can reserve a little more time, unless the court has any other questions for me. Actually, since I do have a few more seconds, which is always a bad thing for a lawyer, I would point out that there's another case that was recently decided. It addresses the Third Circuit Court of Appeals by the name of Monongahela Valley Hospital, Inc., versus the United Steel Paper and Forestry Workers. The citation is 219 U.S. App. Lexis, 38690, Third Circuit, December 30th, 2019. And 219 Westlaw, 7286693. And the Third Circuit sets aside an arbitrator's award and says some interesting things. They say, we have the rare situation where even our heavy degree of deference to arbitrators can save, not even that, can save an arbitration decision an award. In conclusion on the last page, they say that where an arbitrator injects a restriction into a contract which the hospital did not agree to, in which the bargaining unit employees are not entitled to, he dispenses his own brand of industrial justice and should be overturned. This is my favorite part. The bar may be low to uphold an arbitration award, but it still exists, as we are not an amen corner for arbitrators' rulings. And that language that says where the arbitrator injects a restriction that does not exist, and that's exactly what this arbitrator did. And keep in mind, again, the management rights language says you have to have an express contradiction. And there's nothing in that FMLA policy that expressly contradicts management's right to contract out, change rules, and change regulations. Thank you. Thank you. Mr. Brooks? A little bit vehemently challenged compared to Mr. Dinka, so I'm going to lower that. May it please the court, I'm Brian Brooks on behalf of the union. It's a pleasure to be here again. It's been a year or so. I'll start with MV Transportation, and I think I have three things to say about MV Transportation. The first thing is if you notice a footnote in the dissent in the MV Transportation opinion, this court is among the circuits who disagree with the D.C. Circuit's contract coverage standard, whatever it is, and still utilize or utilize specifically the clear waiver standard. And the case cited by the dissent is Amoco against National Labor Relations Board, 602 F. 2nd. 184. You may question whether that opinion turns on what the NLRB does. By reading the opinion, it appeared to me that it doesn't have anything to do with following the NLRB. It has to do with following this court's prior precedents and Supreme Court precedent. The second thing, so that's the law of this circuit right now, which I think is what you have to apply, not a recent opinion of the NLRB on these matters. The second thing I would say about it is Judge Malloy, you're absolutely right. That's my reading of the law, too. He can apply the wrong standard. But if he explains why he applied the wrong standard, that's what the party's contracted for. And your position is not to reverse when he applies that wrong legal standard. I don't think he did, and here's why I don't think he did, which is the third thing I have to say about MV transportation. The way this all hangs together in the arbitrator's mind, based on the arguments presented to him by the parties, is this. You have a management rights provision that says we retain all management rights. Included in those management rights are the right to contract out things. The things that we have the ability to contract out that are mentioned in Section 2 of Article 2 have to do with how batteries are made. They have nothing to do with what would ordinarily be, I agree with Mr. Weimer on this, the ability of management to contract something out that is within a management function. However, in this particular situation, the parties agreed to make Family Medical Leave Act policy, whatever that means, part of their agreement. To incorporate it into the agreement. And nothing in the contract out or management rights provision says we can change it anyway as part of our management rights. So it's not, whether you want to look at contract coverage or specific waiver or whatever it is, this is outside the scope of what MV transportation was talking about. That's the way it hung together in the arbitrator's mind. That was a decision that the parties hired the arbitrator to resolve. They contracted to let him resolve that question. And as long as it is not palpably wrong, this court's job is over. And it is not palpably wrong. Because as he explains, management did not have to do this, did not have to contract in this particular provision, but they did anyway. And once the provision is in, you're absolutely right, Judge Kelly, that once the arbitrator found that the policy is this particular policy that is attached beginning at page 85 of the appendix. That is entitled Human Resources Policies and Procedures Family Medical Leave Act. Once it was determined that that entire document was what the parties incorporated into their agreement, then his opinion reaches a conclusion that is not palpably wrong. Our belief is that's exactly right. The union's position all along has been that has been the exact intent of incorporating FMLA leave into CBA itself. So for all three of those reasons, I disagree wholeheartedly with Mr. Weimer that MV Transportation controls the outcome of this case. It doesn't. It doesn't at all. So that doesn't get Exide where it wishes to be. I will start by confessing I'm not 100% expert on National Labor Relations Act or labor relations law, so I have to relearn it every time. But is there a mootness concept in this area? In other words, if the contracts are expired, does the issue go away? And I don't know if this contract's expired. But if you're talking about a specific language and a specific contract, is there then an obligation to next time the contract comes up for renewal to renegotiate or make clear what the parties thought was ambiguous because you had to go to an arbitrator? I will confess to you that I'm not an expert on NLRA either, but I've tried to catch up. It is my understanding that, yes, there would be such a thing as something akin to a mootness doctrine, which is once this contract is over, it's over. Now, I think, actually, this contract is over. And the reason I have not raised mootness as an issue is because there were remedies that followed this arbitrator's finding as well. So in all candor to you, that's something that has troubled me from time to time as I've processed this case is the fact that I believe the contract has expired. I hope that is right. Mr. Weimer probably knows that better than I do. But I think from the record it has. But, yes, I think that the time to clarify this is when they bargain for a new contract again. And then if management doesn't want incorporation of this leave policy, or if it only wants the fact that you can grieve an FMLA violation as opposed to go straight to federal court, if it wants that to be the extent of its agreement, then that's the time to clarify. But once the arbitrator made that finding, it was the arbitrator's finding to make. And the district court was right not to look behind it. And you would be right not to look behind it because it's the arbitrator's decision to make. But neither party really engaged much in the jurisdictional issue. Yes. What is your position? Is your position that we do have jurisdiction that does not have to go to the board on the violation, the Section 8 violation? This is my understanding. Because this case also raises a National Labor Relations Act violation that is related to the CBA violation, that there is something akin to ancillary jurisdiction. I wrestled with that myself in trying to sort it out. Now, here's what bothers me. I will confess to you that I looked in this circuit and other places for cases like this where you had an initial ULP, unfair labor practice charge, and there was a deferral. And then the parties went to arbitration, and the arbitrators decided a CBA violation and a separate MLRA violation. And I will confess to you, though I'm not the greatest researcher in the world, I'm pretty good, I didn't find anything like that. So, the jurisdictional question has bothered me. My best reading is what I put in the footnote in my brief. I can't remember which footnote it was. beginning the NLRA section, which is because there is a relationship between the two, that there is jurisdiction, that neither party had to split and take part of the case to the NLRB and part of the case to the district court. And that may well be true. I, too, am not an aficionado in this area, and it just troubled me a bit. Because I, too, could not find anything that gave me a good answer. And I was hoping that you, too, would clear it up for me. I looked. I looked hard and didn't find a better answer than what we have here. And it is a troublesome issue. And frankly, I noticed when I went back and read the district court argument that he asked me that question, too. And I said he didn't have jurisdiction, but when you read that, I will confess to you right now, I misunderstood the question. I thought he was asking me something else, which happens. But you're right, too, we cannot stipulate to jurisdiction. I think you have it for the reasons I've stated, but you may not. Now, I also believe this. This is a weird concept. That's a sophisticated legal term. I think that the decision on the CBA violation is not married to the decision on the NLRA violation, necessarily. I think that they're two separate things. And you might have two different standards to apply. I don't think so, for the reasons I stated in the brief, because the choice was to come here, not to the NLRB, to make the decision. So you apply your highly deferential standard to both questions. But if you have more ability to exact plenary review on the NLRA question, you might come to two different decisions on those two different pieces of this case. If we find we have jurisdiction, do we decide the second question because the district court didn't address the merits of that? Am I right in that, in my recollection of the record, or is a remand appropriate on the second question? I don't think so, because you don't defer to the district court's decision on that question anyway. Ordinarily, I would say, yes, you would, but because the district court's review was really no different than your review of these questions, so I don't think you would have to remand to the district court. Now, I think I have to say this in the interest of completeness with respect to MV transportation and what you think about that particular standard. I didn't find cases where this court remanded to arbitrators to reconsider based on a change in the law. But given that if you don't accept my three arguments why you shouldn't apply MV transportation, and it is concerning to you, it seems to me that a workable approach on the NLRA question only might be a remand to the arbitrator to decide based on what this new MV transportation standard means to this case. I think that is where a remand could be a viable question here. It makes sense to me. Again, in my research on this, and I'm pretty good, but not the world's best, I didn't find anything like that. But it's a sensible approach. But the bottom line to this case, I think, is this. And I'll confess to you that I have spent a good portion of my career arguing that cases should not go to arbitration. I oppose, in all sorts of tort situations, arbitration clauses and contracts because I like juries. But the crux of this case is simply this. The parties contracted for the arbitrator's construction of this agreement and this set of facts. That's exactly what they got. He accepted the union's arguments that these changes to the way FMLA gets processed is a major change to these employees. He based it on the record that he was given. I may think it's silly that you need a fax machine or a smartphone, but to these employees in the context of this agreement, to this arbitrator, it wasn't silly. And that's the question that the parties agreed to send to an arbitrator. And wasn't there more than just the phone call? Yes. Wasn't there the idea that there was someone with expertise about the CBA and FMLA? Yes. There was a lot more. The majority of the arbitrator's decision focuses on why this is a material, substantial, and significant change in terms of employment. That's what he focuses on the most because that's what my sense of reading the award is. The arbitrator was not all that tripped up by the contract construction issue. Management rights is expressly changed by paragraph 152 or 154 of the FMLA leave, and they didn't take it back. So you can't change it under the agreement without bargaining. The bigger question to the arbitrator was the NLRA issue of whether this was a material, substantial, and significant change in terms of employment. And he went to great lengths to explain why it was. Families are affected, not just the worker. The way you apply. The fact that you need somebody who is familiar with this particular agreement on site when they're dealing with employees' leave requests made perfect sense to me. So for all of those reasons, we would ask that you confirm the award, and if there are no other questions, I'll take my leave. Just one quick question. You said something that just raised a question in my mind. Is the contract at issue a contract that applies to all Exide plants, or is there an individual? Does this plant have a contract different than Chicago or wherever? The record is that this contract applies to this plant in this bargaining unit. You may have noticed in some of the record that we made kind of a big deal about a party change. At one point, the National Union was named as a party in this case, and it never should have been. It never was served. This is only the local 700, IBEW 700 in Fort Smith, and this contract only applies to this plant. Thank you. Thank you. Mr. Weimer, I think you have some rebuttal left. Thank you. I appreciate that. Let me try to hit two or three high points. Number one, just to be clear, there's no way that Exide could have gotten relief in front of the National Labor Relations Board because they were not the charging party and did not file the charge. Going to the district court and out of the circuit court is the only way Exide could get relief from a finding that it violated the National Labor Relations Act, number one. Number two, words have meaning. This idea, yeah, maybe he got it wrong. The contract says that any limit on management's rights to do these things has to be expressly stated. That is, I think, a word with meaning. The arbitrator in his decision said that he was inferring that. It was an implied waiver, which is directly contrary to the contract language. Third, the controlling issue in this case is did the company have a duty to bargain this change? And by the way, to your question, they changed the policy corporate-wide, including all their union plants. This was the only one. And the real reason the union filed the grievance, and I know because I was there, was Unum screwed up for the first two or three months. People were having a hard time. Exide gave the employees, I think, a 90- or 120-day period where there were no points or anything like that because Unum needed to get its act together, and they finally did. And then two other things. You ask about the contract expiring. What this arbitrator ordered Exide to do was to restore administration of FMLA policies as in effect to September 1, 2016, and ordered us to bargain with the union about this issue. So this goes back to 2016. This is not one of the things we could just clean up and basically go back in time four years, which is not something that Exide should be required to do because of its strong, powerful management rights clause. Last thing I'd say, MV Transportation, the board and the courts, including this court and the Supreme Court, give broad deference to what the labor board says. That's always been the rule, unless what the labor support said is completely wrong. If you find contract coverage is completely wrong, then obviously you won't defer to it. But unless you do, then you should defer to it, and if you do defer to it, you'll vacate the award. Thank you very much. Thank you. Thank you to both counsel for your...